EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Vivienda Rolling Hills<br><br>Recurrida<br><br>v.<br><br>Doris M. Colón Lebrón<br><br>Peticionaria | Certiorari<br><br>2020 TSPR 04<br><br>203 DPR \_\_\_\_ |

Número del Caso: AC-2018-96

Fecha: 15 de enero de 2020

Abogado de la parte peticionaria:

Lcdo. Mauricio López Quiñones

Abogado de la parte recurrida:

Lcdo. José J. Belén Rivera

Materia: Derecho Cooperativo – El proceso de desalojo de un socio o socia de una cooperativa de vivienda se rige por las normas dispuestas en la Ley General de Sociedades Cooperativas.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cooperativa de Vivienda Rolling Hills<br><br>Recurrida<br><br>v.<br><br>Doris M. Colón Lebrón<br><br>Peticionaria | AC-2018-0096 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 15 de enero de 2020.

En esta ocasión, nos corresponde expresarnos en torno al procedimiento de expulsión de un socio o socia de una cooperativa de vivienda. Particularmente, debemos determinar si el mismo se rige por las normas de desalojo dispuestas en la Ley General de Sociedades Cooperativas, infra, o por el procedimiento de desahucio sumario provisto en la Ley de Desahucio, infra. Por las razones que expondremos a continuación, resolvemos que el desalojo de un socio o socia de una cooperativa de vivienda se debe hacer conforme a la Ley General de Sociedades Cooperativas, infra.

Con ello en mente, procedemos a exponer el trasfondo fáctico y procesal que originó la controversia ante nos.

I.

En julio de 1995, la Sra. Doris Colón Lebrón (señora Colón Lebrón o peticionaria) contrató con la Cooperativa

de Vivienda Rolling Hills (Cooperativa o recurrida) para ocupar una unidad de un edificio, convirtiéndose en socia de la Cooperativa. Tras más de veinte años como socia y residente en la Cooperativa, durante el año 2016, la señora Colón Lebrón comenzó a pagar parcial o tardíamente algunos de los pagos mensuales acordados.

Ante ello, la Cooperativa citó a la señora Colón Lebrón a una vista. La peticionaria no acudió a la misma, por lo que se celebró en su ausencia. Luego de la vista, la recurrida emitió una resolución en la que notificó que decidió separar a la señora Colón Lebrón de su condición de socia. Por tal razón, le otorgó a la peticionaria un término de treinta días para desalojar la unidad de vivienda. De lo contrario, indicó que acudiría al Tribunal de Primera Instancia para solicitar el cumplimiento de ello. La Cooperativa fundamentó sus determinaciones y conclusiones de derecho en la Ley General de Sociedades Cooperativas, infra.

Tan solo dos días después, la Cooperativa envió una comunicación escrita a la señora Colón Lebrón indicándole que "[n]os preocupa su condición de socia en la Cooperativa, ya que está de baja y a los treinta (30) días se procede a solicitar la orden de desalojo en el Tribunal de Primera Instancia".[1] En dicha comunicación,

---

[1]Apéndice del certiorari, pág. 212.

la Cooperativa citó a la peticionaria a una reunión "para discutir el asunto". Íd.

La señora Colón Lebrón acudió a la reunión y las partes llegaron a una serie de acuerdos, los cuales la Cooperativa documentó en una carta. Debido a que la carta es pertinente a la controversia ante nos, reproducimos la misma:

Estimada señora Colón:

Agradecemos de manera especial su visita en la mañana para discutir el asunto relacionado con su aportación mensual.

Lamentamos la situación que ha estado confrontando con su salud y confiamos en Dios que logre recuperarse pronto.

Como dialogáramos, el plan de pago acordado con usted es el siguiente:

Renta mes de febrero de 2017 – realizará el pago de febrero de 2017.

Deuda de $974.30 lo pagará en un plan de pago de $243.00 mensuales comenzando en marzo de 2017. Cada pago será los días 15 de cada mes de la siguiente manera;

| | |
|---|---|
| 15 de marzo de 2017 | $243.00 |
| 15 de abril de 2017 | 243.00 |
| 15 de mayo de 2017 | 243.00 |
| 15 de junio de 2017 | 243.00 |

El pago de la aportación mensual por cada mes, será realizado el día primero de cada mes sin atraso alguno.

Le orientamos que si usted confronta algún problema en este proceso deberá informarlo de inmediato. Esto nos ayudará a revisar alguna otra forma para facilitarle este proceso de plan de pago.

Estamos confiado[sic] que usted recuperará su buen estado de salud y logrará además ponerse al día con sus aportaciones mensuales.[2]

Así, pues, las partes acordaron un plan de pago para que la peticionaria subsanara la deuda. Contrario a lo determinado inicialmente por la Cooperativa, la peticionaria ya no estaba obligada a desalojar la unidad.

Transcurridos varios meses, la señora Colón Lebrón no cumplió a cabalidad con el plan de pago y se atrasó en una serie de pagos mensuales. Debido a lo anterior, la Cooperativa acudió al Tribunal de Primera Instancia y presentó una demanda de desahucio por falta de pago contra la peticionaria, conforme a la Ley de Desahucio, infra.

Así las cosas, el Tribunal de Primera Instancia celebró una vista, a la cual la Cooperativa compareció con representación legal y la señora Colón Lebrón por derecho propio. Ese mismo día, el Tribunal de Primera Instancia emitió sentencia en la que declaró ha lugar la demanda de desahucio y cobro de dinero contra la peticionaria. Dicho foro sostuvo su determinación conforme al procedimiento de desahucio sumario dispuesto en la Ley de Desahucio, infra.

Durante los próximos días, la señora Colón Lebrón compareció al foro inferior con representación legal y presentó una serie de mociones. En las mismas arguyó, entre varios asuntos, que el Tribunal de Primera

---

[2]Apéndice del certiorari, pág. 213.

Instancia no tenía jurisdicción sobre la materia. La peticionaria alegó que los procesos administrativos llevados a cabo por la Cooperativa fueron nulos, por entender que tanto la citación a la vista, así como la Resolución emitida por la Cooperativa, no fueron notificadas conforme a lo dispuesto en la ley. De igual forma, razonó que su procedimiento de desalojo como socia de la Cooperativa se debía realizar conforme al estatuto especial aplicable, entiéndase, la Ley General de Sociedades Cooperativas, infra. En consecuencia, señaló que el dictamen emitido en virtud de la Ley de Desahucio, infra, era nulo. El foro primario declaró no ha lugar a todas las mociones presentadas.

Así, como último remedio, la señora Colón Lebrón presentó una Moción de Solicitud de Reconsideración y Solicitud para Fijar Fianza. A esos efectos, urgió al Tribunal de Primera Instancia que reconsiderara su dictamen, en virtud de los argumentos expuestos anteriormente. En la alternativa, solicitó que el tribunal le fijara o le eximiera del pago de fianza. Esto, pues la Ley de Desahucio, infra, exigía el pago de una fianza para acudir en apelación. Arguyó que, de lo contrario, la sentencia del Tribunal de Primera Instancia no se consideraría final y firme, por lo que estaría impedida de acudir al foro apelativo intermedio. El 31 de julio de 2018 el Tribunal de Primera Instancia negó

la solicitud de reconsideración y fijó una fianza de $5,016.00.

Inconforme con ese proceder, el 8 de agosto de 2018, la señora Colón Lebrón recurrió al foro apelativo intermedio mediante un recurso de apelación. En el mismo, indicó que el Tribunal de Primera Instancia erró al dictar sentencia de desahucio conforme a la Ley de Desahucio, infra. La peticionaria reiteró que su desalojo y la revisión judicial de dicho proceso se debió haber realizado según la normativa dispuesta en la Ley General de Sociedades Cooperativas, infra.

En respuesta, la Cooperativa arguyó que la señora Colón Lebrón fue privada de su condición de socia y que el plan de pago acordado posteriormente constituyó un contrato de arrendamiento. A esos efectos, alegó que la carta enviada por la Cooperativa evidencia la voluntad de las partes de convertir a la señora Colón Lebrón en una arrendataria, sin los beneficios de una persona socia. Por tanto, sostuvo que la señora Colón Lebrón debía ser desahuciada conforme a la Ley de Desahucio, infra, y que no estaba cobijada por la Ley General de Sociedades Cooperativas, infra.

A raíz de lo anterior, la Cooperativa alegó que el Tribunal de Apelaciones no tenía jurisdicción para atender el reclamo de la señora Colón Lebrón. Esto, pues la Ley de Desahucio, infra, imponía un término de cinco (5) días para presentar el recurso de apelación y para

pagar la fianza fijada. Al recurrir al foro apelativo intermedio tardíamente y sin realizar el pago de la correspondiente fianza, la Cooperativa adujo que procedía la desestimación del recurso.

Ponderados los argumentos de las partes, el foro apelativo intermedio desestimó el recurso ante su consideración. Ello, pues concluyó que la Ley de Desahucio, infra, era de aplicación a la controversia de epígrafe.

Inconforme con tal determinación, la señora Colón Lebrón comparece ante este Tribunal mediante un recurso de certiorari en el cual reitera que el procedimiento de desalojo de la Cooperativa se debe ejecutar conforme a la Ley General de Sociedades Cooperativas, infra.[3] En virtud de ello, arguye que el Tribunal de Apelaciones erró al requerir el pago de una fianza cuando ello no es exigible en el estatuto especial de la Ley General de Sociedades Cooperativas, infra. A su vez, alega que el Tribunal de Primera Instancia erró al denegar su moción de relevo de sentencia.[4] Por su parte, la Cooperativa reitera los argumentos antes esbozados.

---

[3]La Sra. Doris Colón Lebrón (señora Colón Lebrón o peticionaria), recurre ante este Tribunal mediante un recurso que tituló "apelación". Sin embargo, el recurso adecuado es el certiorari, conforme al Artículo 3.002 de la Ley de la Judicatura de Puerto Rico, según enmendada, 4 LPRA sec. 24s.

[4]La señora Colón Lebrón presentó ante este Tribunal una Moción en solicitud de orden al amparo de la Regla 31(A) del Reglamento del Tribunal Supremo. En el mismo, solicitó que ordenáramos la eliminación de un documento

El 25 de enero de 2019, el Pleno de este Tribunal acordó expedir el recurso ante nuestra consideración. Con el beneficio de la comparecencia de las partes, este Tribunal procede a resolver la controversia ante nuestra consideración.

## II.

### A.

El procedimiento de desahucio tradicional está reglamentado en los Artículos 620 al 634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838 (Ley de Desahucio). La acción de desahucio es el mecanismo que tiene el dueño o dueña de un inmueble para "recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna." Fernández & Hno. v. Pérez, 79 DPR 244, 247 (1956). A esos efectos, la acción de desahucio es un procedimiento de carácter sumario que responde al interés del Estado de atender con agilidad el reclamo de una persona dueña de un inmueble que ha sido impedido de ejercer su derecho a poseer y disfrutar del mismo. ATPR v. SLG Volmar-Mathieu, 196 DPR 5, 9 (2016).

---

presentado por la Cooperativa de Vivienda Rolling Hills (Cooperativa) en el apéndice de su alegato. Ello, por el fundamento de que el documento impugnado no fue entregado al Tribunal de Primera Instancia. Debido a que el documento no es pertinente para la controversia ante nuestra consideración, proveemos no ha lugar a la moción presentada.

La Ley de Desahucio, supra, dispone de un procedimiento de apelación para pleitos de esta naturaleza. 32 LPRA sec. 2830. Para apelar una sentencia de deshaucio, la parte adversamente afectada tendrá que cumplir con una serie de requisitos, entre ellos, presentar el recurso de apelación dentro del término jurisdiccional de cinco (5) días desde la notificación de la sentencia. 32 LPRA sec. 2831.

Además, cuando la acción de desahucio esté fundamentada en falta de pago, se le exige a la parte apelante que otorgue una fianza para responder por los daños y perjuicios que puedan causarse y por las costas del litigio. 32 LPRA sec. 2832. A modo de excepción, el tribunal podrá eximir del pago de fianza a una parte que sea insolvente económicamente. Bucaré Management v. Arriaga García, 125 DPR 153, 158-159 (1990). Recientemente, resolvimos que el referido término de cinco (5) días no comenzará a transcurrir hasta tanto el Tribunal de Primera Instancia fije el monto de la fianza que debe otorgarse. ATPR v. SLG Volmar- Mathieu, supra, págs. 14-15.

Una vez el Tribunal de Primera Instancia declare con lugar una demanda de desahucio, se podrá ordenar el lanzamiento de la parte demandada **desde que la sentencia sea final y firme**. 32 LPRA sec. 2836. En términos ordinarios, la sentencia será final y firme cuando

transcurra el término de cinco (5) días sin que se haya presentado una apelación.

Sin embargo, a modo de excepción, la Ley de Desahucio, supra, provee un proceder distinto en casos donde la parte demandada es una familia insolvente económicamente. En estas circunstancias, el foro primario debe notificar inmediatamente la sentencia al Departamento de la Familia y al Departamento de la Vivienda. 32 LPRA sec. 2836. A partir de dicha notificación, el tribunal emitirá una orden de lanzamiento que tendrá un término de veinte (20) días. Íd.

**B.**

Por otro lado, el cooperativismo se ha definido como la asociación voluntaria y solidaria de personas que persiguen un fin común. A. Parrilla-Bonilla, Cooperativismo: Teoría y Práctica, 1ra ed., Río Piedras, Ed. Universitaria U.P.R., 1971, pág. 33. El cooperativismo se materializa en asociaciones autónomas de "personas jurídicas privadas de interés social, fundadas en la solidaridad y el esfuerzo propio para realizar actividades económico-sociales, con el propósito de satisfacer necesidades individuales y colectivas, sin ánimo de lucro". Ley General de Sociedades Cooperativas de Puerto Rico de 2004, Ley Núm. 239 de 1 de septiembre de 2004, 5 LPRA sec. 4387 (Ley General de Sociedades Cooperativas). Las cooperativas se

sustentan en los valores de ayuda mutua, responsabilidad, democracia, igualdad, equidad y solidaridad.

Debido a la importancia del cooperativismo, nuestro ordenamiento cuenta con un extenso estatuto que regula las cooperativas de Puerto Rico. A esos fines, la Ley General de Sociedades Cooperativas, supra, tiene como objetivo "dotar a las cooperativas y el sector cooperativo, en general, de un marco jurídico para su organización, funcionamiento y regulación". 5 LPRA sec. 4381 (Propósito). En esa encomienda, el Gobierno de Puerto Rico se comprometió a "ayudar, estimular, desarrollar, promover y dar apoyo al movimiento cooperativo". 5 LPRA sec. 4382.

El estatuto reglamenta las cooperativas y las personas que en ellas participan. Debido a lo anterior, el estatuto especifica que **"[l]as cooperativas organizadas de conformidad con este capítulo se regirán por sus disposiciones y, en general, por el derecho cooperativo.** Supletoriamente se regirán por el derecho que les sea aplicable en cuanto sea compatible con su naturaleza". (Énfasis suplido). 5 LPRA sec. 4384.

La Ley General de Sociedades Cooperativas, supra, dispone de una variedad de cooperativas que podrían existir en virtud de este estatuto. 5 LPRA sec. 4390. En lo pertinente a la controversia ante nuestra consideración, las cooperativas de vivienda son aquellas

que se dedican a actividades relacionadas con la convivencia comunitaria. 5 LPRA sec. 4580.

En Puerto Rico, las cooperativas de vivienda comenzaron a desarrollarse en la década de 1940, con el objetivo de aliviar las condiciones de pobreza y necesidad en el país. E. M. Pérez Riestra, Cooperativismo en Puerto Rico y otros Países: Evolución y tendencias en el siglo XXI, 1ra ed. rev., Puerto Rico, Ed. Publicaciones Puertorriqueñas, Inc., 2012, pág. 140. A esos fines, las cooperativas de vivienda se convirtieron en una "excelente alternativa domiciliar, al ofrecer una buena calidad de vida para las familias puertorriqueñas y facilitar pagos mensuales de acuerdo con los ingresos de cada cual". Íd., pág. 139. De este modo, las cooperativas de vivienda son una herramienta para garantizar un hogar seguro y estable a personas de escasos recursos.

Cónsono con lo anterior, la Ley General de Sociedades Cooperativas, supra, establece que el fin primordial de las cooperativas de vivienda es el siguiente:

> [P]roveer una vivienda adecuada a **familias de escasos y medianos recursos**, asegurar un entorno comunitario tranquilo y seguro, educar a socios y residentes en los principios de autogestión, responsabilidad y convivencia social y evolucionar este tipo de alternativa de vivienda cooperativa para aumentar la efectividad con que se logran estos cometidos. (Énfasis suplido). 5 LPRA sec. 4580.

Debido a la envergadura de este tipo de cooperativa, el estatuto especifica que está en el interés del Gobierno de Puerto Rico "proveer para la protección y desarrollo de este tipo de vivienda". Íd.

En esencia, las cooperativas de vivienda operan mediante un sistema de propiedad común, en el cual la titularidad del inmueble pertenece a la cooperativa. Así, la cooperativa cede la posesión de sus unidades a favor de las personas socias y sus familiares. 5 LPRA sec. 4582. Por su parte, los socios y socias pagan cánones significativamente menores a los precios del mercado. Bajo este esquema, los socios y socias no pueden enajenar ni gravar las unidades de vivienda, pues las mismas solo pueden ser ocupadas por éstos y sus familiares. De este modo "se garantiza el derecho a techo seguro o estable para las familias". R. Colón Morales, La ruta autodestructiva del cooperativismo de vivienda puertorriqueño: el problema de la pérdida de la identidad cooperativa mediante la transformación de valores de uso en valores de cambio, 52 Boletín de la Asociación Internacional de Derecho Cooperativo 19, 35 (2018).

Ahora bien, la Ley General de Sociedades Cooperativas, supra, provee que las cooperativas de vivienda operan bajo una mancomunidad de socios y socias, quienes tienen una serie de derechos y deberes establecidos en la ley y en los reglamentos internos de cada cooperativa. 5 LPRA sec. 4582. A esos fines, la ley

establece el procedimiento a seguir ante el incumplimiento de un socio o socia con sus deberes, incluyendo el pago tardío de las aportaciones mensuales. En estos casos, las cooperativas de vivienda deberán celebrar una vista con el socio o socia, en la cual se deben satisfacer ciertas protecciones procesales, como la oportunidad de ser escuchada, notificación oportuna y adecuada de la vista, y el derecho de acudir con representación legal. 5 LPRA sec. 4586.

En las vistas, las cooperativas están facultadas para tomar una variedad de medidas. Entre ellas, se encuentran amonestar a la persona, imponer penalidades, suspender servicios a la vivienda o "separarlo como socio privándolo de sus derechos como tal y concederle un término de treinta (30) días para que desaloje la unidad". 5 LPRA sec. 4585.

Similarmente, el Reglamento de la recurrida dispone específicamente de las distintas sanciones que puede imponer la Cooperativa contra un socio o socia que incurra en morosidad. A esos fines, el Reglamento faculta a la Cooperativa a tomar varias medidas, entre ellas, las siguientes:

. . .

> (iii) Aceptar el pago del mes corriente y **ofrecer un plan de pago** por el resto de la deuda, sujeto a un período de prueba por el mismo término de tiempo del plan, cuando la **socia** demuestre que incumplió por causas fuera de su control, su buena fe y su intención de no incumplir el plan de pagos, la Junta de Directores podrá determinar que

la socia violó las condiciones del periodo de prueba y **podrá proceder a privarle de su condición de socia sin más** citación ni audiencia o vista. De cumplir el plan de pagos, la Junta de Directores procederá a archivar el caso.

(iv) **Dar de baja al socio de la Cooperativa**, privándole de los derechos que tenga como socia y concederle un término de treinta (30) días para que desaloje la unidad de vivienda. (Énfasis suplido). Artículo XVI, Sección 2, Reglamento Cooperativa de Rolling Hills (22 de junio de 2008)(Reglamento de la Cooperativa).[5] (Énfasis suplido).
. . .

Como puede apreciarse, el Reglamento de la Cooperativa especifica que aquella persona con la cual se acuerda un plan de pago continúa siendo socio o socia de la Cooperativa.

Una vez una cooperativa decide privar a una persona de su condición de socia, el Artículo 35.7 de la ley especial provee que ésta tendrá un término de treinta (30) días para desalojar la unidad. 5 LPRA sec. 4587. Si la persona no desocupa la unidad en ese término, la cooperativa podrá acudir al Tribunal de Primera Instancia para solicitar una orden de lanzamiento. Íd. Al tratase de un procedimiento sumario, la petición de la cooperativa tendrá prioridad en el calendario del tribunal.

---

[5] Apéndice del alegato de la Cooperativa, pág. 3. Es menester destacar que del expediente no surge que las partes hayan presentado el Reglamento de la Cooperativa de Vivienda Rolling Hills en sus respectivos recursos. Sin embargo, ambas partes presentaron el documento titulado Citación de vista por falta de pago, el cual incluye las disposiciones reglamentarias aplicables al incumplimiento de personas socias con sus deberes.

Así, el foro primario decidirá si procede emitir una orden de lanzamiento. Ahora bien, distinto al procedimiento dispuesto en la Ley de Desahucio, supra, **toda** orden de desalojo en el contexto de las cooperativas de vivienda contará un **término de cuarenta (40) días.** Íd. Además, las órdenes de esta naturaleza deben estar acompañadas por una copia certificada de la decisión de la Cooperativa y, a su vez, deben ser notificadas al Departamento de la Familia y al Departamento de la Vivienda. Íd.

Por otro lado, el Artículo 35.8 faculta a las personas socias y a aquellas perjudicadas por determinaciones de las cooperativas de vivienda a acudir al Tribunal de Primera Instancia en revisión judicial. 5 LPRA sec. 4588. Para ello, deben comparecer ante el foro primario dentro de los treinta (30) días próximos a la decisión final de la cooperativa. Íd.

Una vez ante el Tribunal de Primera Instancia, la Ley General de Sociedades Cooperativas, supra, dispone que "**cualquier parte que resulte perjudicada por una sentencia del Tribunal de Primera Instancia** podrá solicitar la revisión de dicho fallo mediante certiorari, dentro de los **treinta (30) días** del archivo en autos de la decisión del Tribunal de Primera Instancia". (Énfasis suplido). Íd. Dicho término será de carácter jurisdiccional.

Por último, es menester destacar que el andamiaje antes descrito debe ser interpretado conforme a los principios de justicia social, solidaridad y democracia que caracterizan al cooperativismo. A esos fines, la Ley General de Sociedades Cooperativas, supra, especifica que "[l]a interpretación de las disposiciones de este subcapítulo se harán en consideración a la protección de la naturaleza social especial de este tipo de vivienda comunitaria y al derecho cooperativo. **No se aplicará otro tipo de normativa cuyo efecto sea contrario a esto**". (Énfasis suplido). 5 LPRA sec. 4588.

En consideración al marco jurídico enunciado, procedemos a resolver la controversia ante nos.

### III.

La controversia ante nuestra consideración nos exige precisar la normativa aplicable a los procedimientos de desalojo en cooperativas de vivienda. Por un lado, la señora Colón Lebrón arguye que la determinación que tomó la Cooperativa de desalojarla y el consecuente dictamen del foro primario son revisables según los parámetros de la Ley General de Sociedades Cooperativas, supra. Esto, pues es el estatuto especial que rige la materia.

Por su parte, la Cooperativa sostiene que, ante el incumplimiento de la señora Colón Lebrón con las aportaciones mensuales, ésta fue privada de su condición de socia. Debido a lo anterior, la recurrida alega que

el plan de pago acordado posteriormente entre las partes constituye un contrato de arrendamiento y que, por ende, la peticionaria está despojada de todo beneficio de la ley especial.

De entrada, procede dilucidar cuál es la normativa aplicable al desalojo de un socio o socia de una cooperativa de vivienda. Como expusimos anteriormente, la Asamblea Legislativa elaboró un marco jurídico específicamente para las cooperativas mediante la Ley General de Sociedades Cooperativas, supra. Como corolario de lo anterior, la ley provee que las cooperativas organizadas de conformidad con el estatuto se regirán por sus disposiciones. 5 LPRA sec. 4384. Indiscutiblemente, este conjunto de normas, doctrinas y guías aplican a las entidades cooperativas y los sujetos que en ellas participan.

A esos fines, el Artículo 35.7 de la ley especial establece un procedimiento especializado para los casos de desalojo en las cooperativas de vivienda. Ello, en miras de proveer unas protecciones y garantías particulares a las personas socias que, de ordinario, no albergan las personas desahuciadas de su hogar.

Una vez las cooperativas de vivienda acuden al Tribunal de Primera Instancia para gestionar la expulsión de un socio o socia, el foro primario debe evaluar si procede una orden de lanzamiento. 5 LPRA sec. 4587. Si ello es así, la ley especial exige que toda orden de

lanzamiento disponga de un término de cuarenta (40) días para desalojar la unidad de vivienda. Íd. Es decir, en las circunstancias de cooperativas de vivienda, las personas que son expulsadas cuentan con un término de más de un mes para auscultar otras posibilidades de vivienda, previo a abandonar la propiedad. Por otro lado, en los casos de desahucio tradicionales, el lanzamiento puede ser ordenado desde que la sentencia sea final y firme. 32 LPRA sec. 2836.

Asimismo, la ley especial le impone al foro primario el deber de notificar toda orden de desalojo al Departamento de la Familia y al Departamento de Vivienda. 5 LPRA sec. 4587. La Ley de Desahucio, supra, como norma general, no garantiza esa protección y se limita a aquellos casos en que medie determinación de insolvencia económica. 32 LPRA sec. 2836.

Además, en vista de que las cooperativas de vivienda responden a las necesidades de familias de escasos recursos, la Ley General de Sociedades Cooperativas, supra, **no** exige la prestación de una fianza en casos de apelación. 5 LPRA sec. 4580. Mediante esta distinción con la Ley de Desahucio, supra, se evidencia aún más la intención legislativa de que el procedimiento de desalojo se realice conforme a las normativas especiales delineadas específicamente para este contexto.

Concretamente, la <u>Ley General de Sociedades Cooperativas</u>, <u>supra</u>, contempla en su Artículo 35.8 las circunstancias en que una persona afectada por una determinación de una cooperativa de vivienda puede recurrir a los foros judiciales en revisión judicial. 5 LPRA sec. 4588. En esos casos, la ley especial provee que "cualquier parte que resulte perjudicada" por una sentencia del Tribunal de Primera Instancia de esta naturaleza, puede acudir en revisión al Tribunal de Apelaciones. Íd. Para ello, el mismo estatuto exige una serie de requisitos, entre éstos, solicitar la revisión en un término jurisdiccional de treinta (30) días y notificar a las otras partes del caso. Íd.

Como puede apreciarse, la Asamblea Legislativa diseñó un andamiaje especializado para garantizar ciertas protecciones a las personas que son desalojadas de las cooperativas de vivienda. Esas protecciones y garantías varían significativamente del procedimiento dispuesto en la <u>Ley de Desahucio</u>, <u>supra</u>. Cónsono con lo anterior, se ha considerado que "**los procesos de recuperación de unidades en las cooperativas de vivienda se rigen por las disposiciones especiales contenidas en la propia [Ley General de Sociedades Cooperativas], y no por los procedimientos de desahucio sumario u ordinario aplicables a relaciones estrictamente patrimoniales**". (Énfasis suplido). R. Colón Morales, <u>supra</u>, pág. 36.

Indudablemente, el procedimiento de desalojo de una cooperativa de vivienda debe regirse estrictamente por la Ley General de Sociedades Cooperativas, supra. Por tanto, la revisión de una determinación de orden de lanzamiento en virtud de un desalojo debe, a su vez, realizarse conforme a la normativa y a los principios dispuestos en la propia ley especial. Así, procede resolver que las órdenes de lanzamiento de las cooperativas de vivienda se podrán revisar conforme a lo dispuesto en el Artículo 35.8 de la ley especial. 5 LPRA sec. 4588. De este modo, las personas adversamente afectadas por una orden de lanzamiento de una cooperativa de vivienda pueden revisar la misma en un término de treinta (30) días, sin incurrir en el pago de una fianza.

Ello es el resultado más lógico y sensato en el contexto que nos ocupa. Particularmente, teniendo presente que la Ley General de Sociedades Cooperativas, supra, exige que toda interpretación relacionada con las cooperativas de vivienda debe realizarse "en consideración a la naturaleza social especial de este tipo de vivienda comunitaria y al derecho cooperativo" y que "**[n]o se aplicará otro tipo de normativa cuyo efecto sea contrario a esto**". (Énfasis suplido). 5 LPRA sec. 4588.

En consecuencia, no hay fundamento jurídico alguno para acudir supletoriamente a las disposiciones de una ley general que son contrarias al estatuto especial y a

sus principios cooperativistas. Mas aún, cuando del estatuto especial se desprende una intención legislativa clara e inequívoca de regular el procedimiento ante nuestra consideración.

Debido a lo anteriormente expuesto, la señora Colón Lebrón, como una parte adversamente afectada por una sentencia del Tribunal de Primera Instancia, estaba facultada para acudir en revisión al Tribunal de Apelaciones. La presentación del recurso de certiorari no requiere el pago de una fianza. A esos efectos, la peticionaria acudió oportunamente al foro apelativo intermedio, pues compareció dentro del término jurisdiccional de treinta (30) días.

Aclarado ese asunto de umbral, procede atender el argumento de la Cooperativa de que la señora Colón Lebrón fue privada de su condición de socia y que, por tal razón, no está cobijada por la ley especial. Tal como se desprende de la Ley General de Sociedades Cooperativas, supra, el procedimiento para expulsar a una persona de una cooperativa de vivienda comienza precisamente con una determinación de privarla de su condición de socia por incurrir en conducta indebida. 5 LPRA secs. 4584-4585. Luego de que se toma esa decisión mediante los procedimientos administrativos correspondientes, se activa el proceso de lanzamiento y de revisión judicial dispuesto en la ley especial. 5 LPRA secs. 4587-4588. Por consiguiente, aunque a una persona se le prive de su

condición de socia, eso no la despoja de la normativa del estatuto especial aplicable. Interpretar lo contrario vulneraría el mandato legislativo.

Mas aún, la contención de la Cooperativa de que la señora Colón Lebrón fue privada de su condición de socia meses antes de su eventual desalojo es errónea. Como expusimos anteriormente, la Ley General de Sociedades Cooperativas, supra, faculta a las cooperativas de vivienda a sancionar a los socios y socias que incurren en mora al pagar las aportaciones mensuales. 5 LPRA sec. 4585. A esos efectos, el Reglamento de la Cooperativa establece que ésta podrá tomar una variedad de medidas, entre ellas, ofrecer un plan de pago sujeto a un período de prueba. En ese sentido, el Reglamento especifica que **una vez la persona incumpla con el plan de pago acordado, la Cooperativa podrá, entonces, privar a la persona de su condición de socia sin trámite ulterior**. Artículo XVI, Sección 2, Reglamento de la Cooperativa, supra. Así, el Reglamento **no** dispone que un plan de pago priva a la persona de su condición de socia. Al contrario, del Reglamento se desprende claramente que, en estos casos, la persona continuará ocupando la unidad de vivienda en calidad de socia.

Ciertamente, en el caso ante nuestra consideración, la Cooperativa determinó en una vista inicial que la señora Colón Lebrón debía ser privada de su condición de socia y que debía desalojar la unidad de

vivienda en un término de treinta (30) días. Sin embargo, tan solo días después, las partes acordaron que la señora Colón Lebrón podía continuar viviendo en la cooperativa y que ésta debía subsanar su deuda mediante un plan de pago.

Al así hacerlo, la Cooperativa se retractó de su decisión inicial y optó por tomar otra de las medidas disponibles en casos de incumplimiento de los socios y socias. De este modo, la decisión de privar a la señora Colón Lebrón de su condición de socia quedó sin efecto. Según el propio Reglamento de la Cooperativa, ese plan de pago no privó a la peticionaria de su condición de socia.

Ante este marco, la Cooperativa sostiene erróneamente que el plan de pago constituye un contrato de arrendamiento que priva a la peticionaria de los beneficios de la ley especial. El contrato de vivienda original pactado entre las partes evidencia que la señora Colón Lebrón acordó ocupar una unidad del edificio para su uso personal y en calidad de socia, mediante el pago de mensualidades.[6] Por su parte, la carta que documenta el plan de pago se limita a exponer que las partes acordaron un cambio en la forma en que la peticionaria haría los pagos mensuales pactados. Esa modificación no demuestra, de forma alguna, que las partes hayan acordado

---

[6]Apéndice del recurso de apelación ante el Tribunal de Apelaciones, pág. 79.

alterar la naturaleza de su relación jurídica, ni mucho menos, extinguir las obligaciones originalmente pactadas.

En consecuencia, a la luz de lo expuesto anteriormente, resolvemos erró el Tribunal de Apelaciones al desestimar el recurso ante su consideración. Al aplicar la Ley General de Sociedades Cooperativas, supra, la señora Colón Lebrón cumplió con todos los requisitos necesarios para acudir al foro apelativo intermedio.

**IV.**

Al amparo de los fundamentos enunciados, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso al referido foro para que atienda el recurso en los méritos.

Se dictará sentencia de conformidad.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cooperativa de Vivienda Rolling Hills<br><br>Recurrida<br><br>v.<br><br>Doris M. Colón Lebrón<br><br>Peticionaria | AC-2018-0096 | *Certiorari* |

SENTENCIA

San Juan, Puerto Rico, a 15 de enero de 2020.

Al amparo de los fundamentos enunciados, se revoca la determinación del Tribunal de Apelaciones y se devuelve el caso al referido foro para que atienda el recurso en los méritos.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García disiente y hace constar la siguiente expresión:

> "Considero que, en las circunstancias particulares de este caso, el derecho aplicable para desalojar a la Sra. Doris Colón Lebrón de la Cooperativa de Vivienda Rolling Hills era el procedimiento dispuesto bajo la Ley de Desahucio preceptuado en el Código de Enjuiciamiento Civil, 32 LPRA sec. 2821 *et seq.*".

José Ignacio Campos Pérez
Secretario del Tribunal Supremo